869 F.2d 1491
 1989-1 Trade Cases 68,460
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HYPOINT TECHNOLOGY, INC., Plaintiff-Appellee,
v.
HEWLETT-PACKARD COMPANY, Defendant-Appellant.
 No. 88-3237.
 United States Court of Appeals, Sixth Circuit.
 Feb. 21, 1989.
 
 Before KENNEDY, RALPH B. GUY, Jr. and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Defendant-Appellant Hewlett-Packard Company ("H-P") appeals a district court order granting a preliminary injunction to HyPoint Technology, Inc. ("HyPoint"). We agree with H-P that the district judge's order failed to make the necessary factual findings required by Rule 52(a) in order for this court properly to exercise its reviewing function.
 
 I.
 
 2
 H-P manufactures and services computer hardware. It offers customers two service options, either a contractual or a time-and-materials ("T & M") arrangement. Under a contractual arrangement, a monthly fee covers service and preventive maintenance. Under a T & M arrangement, a customer pays for labor, travel, and parts when service is required.
 
 
 3
 At one time H-P provided a premium response time service where, for an additional $350, it would guarantee four hour T & M response to customers located within one hundred miles of a field office. Effective August 1, 1987, however, H-P terminated the four-hour response option and thereafter guaranteed response to a service call within one business day. H-P asserted that the overhead involved in committing to four-hour T & M response did not cover its costs.
 
 
 4
 On September 23, 1987, HyPoint brought suit in federal district court seeking damages, and preliminary and permanent injunctive relief requiring H-P to maintain four-hour response for T & M customers. HyPoint alleged that it was "a third party maintenance firm ("3PMF") specializing in service and repair of H-P hardware systems." HyPoint alleged that H-P possessed monopoly power in HyPoint's definition of the relevant market for "the maintenance and repair of H-P hardware systems" and that H-P had "target[ed] 3PMF's for certain conduct by H-P designed to force 3PMFs out of the market for the repair and the service of H-P hardware."[1]
 
 
 5
 The district court granted HyPoint's request for a preliminary injunction. In its order the court listed the declarations and affidavits each party had submitted and concluded:
 
 
 6
 Hypoint, through evidence submitted to this Court, has demonstrated that at a minimum, there are "serious questions going to the merits" of the present case, Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir.1982). Hypoint has given a very strong presentation of evidence which demonstrates that unless a preliminary injunction is issued, Hypoint will suffer irreparable harm. Numerous declarations and affidavits state that the inability of Hypoint to offer the four-hour response uplift has caused Hypoint's clients to seek maintenance contracts with other companies, including Hewlett-Packard, and will effectively halt any other clients from entering maintenance contracts with Hypoint. Thus, the viability of Hypoint's existence is at stake.
 
 
 7
 The harm to others, particularly Hewlett-Packard and its clients, will be minimal, if any harm exists at all. Hewlett-Packard shall not be required to "subsidize" Hypoint. Hewlett-Packard is not precluded from charging Hypoint the market price for the services which it provides. Finally, the granting of the preliminary injunction is in the public interest in preserving the status quo of the parties until a decision on the merits can be reached.
 
 II.
 
 8
 "Appellate review of a district court decision to grant or deny a preliminary injunction is ... limited to 'a determination of whether the District Court abused its discretion.' " Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 102 (6th Cir.1982) (quoting Mason County Medical Ass'n v. Knebel, 563 F.2d 256, 261 (6th Cir.1977)). Normally courts consider four factors before exercising discretion to grant preliminary injunctions:
 
 
 9
 1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;
 
 
 10
 2) Whether the plaintiff has shown irreparable injury;
 
 
 11
 3) Whether the issuance of a preliminary injunction would cause substantial harm to others;
 
 
 12
 4) Whether the public interest would be served by issuing a preliminary injunction.
 
 
 13
 Id. But while "these four factors guide the discretion of the district court, they do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief." Michigan Brick, 679 F.2d at 102. Thus, several circuits, including ours, have recognized a "balance of hardships" test that under some circumstances may guide a district court's exercise of discretion. "[T]he alternate test requires a showing of 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.' " Id. at 103 (quoting Sonesta Int'l Hotels Corp. v. Wellington Associates, 483 F.2d 247, 250 (2d Cir.1973) (emphasis in original)).
 
 
 14
 We perceive problems with the district court's application of a "serious questions" standard on the record before us. For one, it is not evident why the district court, in determining whether to issue the requested injunctions, adopted the "serious questions" standard rather than the traditional four-part test because, on this record, the balance of hardships does not decidedly favor HyPoint. Likewise, the record does not reveal that HyPoint has raised "serious questions" for an antitrust violation. Finally, even a "serious questions" test requires a showing of irreparable injury. Michigan Brick, 679 F.2d at 103-04. In all events, even if the "serious question" approach to determining Hypoint's entitlement to an injunction had been correct, and we think it was not, the district court's order is entirely devoid of the specific findings of fact necessary to support the legal conclusions it reaches.
 
 
 15
 Rule 52(a) requires fact finding of reasonable specificity in order to indicate the basis for the court's decision. Grover Hill Grain Co. v. Baughman-Oster, Inc., 728 F.2d 784, 792-93 (6th Cir.1984). But here the court's order merely lists the declarations by the parties and concludes that HyPoint has presented "serious questions" of an antitrust violation. The district court has given no indication of how the action taken by H-P and affecting HyPoint raises serious questions of an antitrust violation. Likewise, the district court's conclusory statement that HyPoint has presented substantial evidence that it is threatened with irreparable harm does not present us with reviewable factual findings demonstrating that harm. The district court did indicate that HyPoint was threatened with extinction, but, on the record before us, that conclusion is entirely unsupported and clearly erroneous. What is not clear is why HyPoint faces an inadequate remedy at law in light of the fact that its profit from lost contracts is not inestimable and H-P's action has not caused HyPoint to lose any good will. Huard-Steinheiser, Inc. v. Henry, 280 F.2d 79, 84 (6th Cir.1960), indicates that in some cases a record may be so clear that the failure to comply with Rule 52(a) will not demand reversal. But in this case, the district court disclosed that the evidence upon which it was ruling included approximately twenty contradictory declarations, affidavits, and confidential disclosures. One of Rule 52's purposes is to eliminate the need for an appellate court to review allof the evidence de novo seeking justification for a trial court's decision.
 
 
 16
 "A district court abuses its discretion" when it grants a preliminary injunction without setting forth the specific factual findings that would invoke each prong of the applicable test, or when it applies an improper legal standard. Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.), cert. denied, 469 U.S. 1200 (1985). The facts in this case do not support the district court's departure from the traditional four-part test and the court failed to make adequate findings with respect to the proper standard. We therefore vacate the preliminary injunction and remand the case to the district court for further proceedings with instructions to make specific and detailed findings of fact with respect to each of the four factors relevant to a preliminary injunction decision as set forth in Michigan Brick and Mason County, supra.
 
 III.
 
 17
 The order of the district court granting the preliminary injunction is VACATED. The cause is REMANDED for further proceedings in accordance with this opinion.
 
 
 
 [1]
 In point of fact, HyPoint is not a true 3PMF in competition with H-P to provide service. Rather, HyPoint sells used H-P hardware and is an arbitrager/insurer providing H-P's customers with H-P's service. Rather than providing its own service or maintenance work, HyPoint receives a fee from its customers for which it guarantees any necessary H-P T & M service. HyPoint loses money if its fees do not exceed the costs of the necessary T & M service. HyPoint makes money if H-P's equipment performs reliably. The consumer benefits from having a fixed service cost lower than the fixed cost offered by H-P's contractual arrangement